IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JIMMY MEJIA,

    Petitioner,

v.

ANTHONY KANE, Acting Warden,
Correctional Training Facility, Soledad,

    Respondent.
_____/

No. C 06-04097 WHA

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Jimmy Mejia, a state prisoner proceeding with counsel, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. He seeks an order effectively granting him parole from state prison. This order agrees that Mejia has a liberty interest in parole but holds that the Board of Prison Terms and the California Superior Court met the Constitution's due process requirements. Accordingly, the petition for a writ of habeas corpus is **DENIED**.

## STATEMENT

Mejia, who is fifty-four years old, is currently in the custody of the California Department of Corrections and Rehabilitation for one count of second degree murder with a firearm enhancement (Resp. Exh. 2 at 1). He is serving a sentence of fifteen years to life.

On May 12, 1978, Mejia was driving while under the influence of alcohol. He ran through a traffic signal and hit another car. Both passengers in the other car, a 35-year-old woman and a 74-year-old woman, died. Mejia was arrested immediately after the collision,

charges were filed against him, and he was released from custody after posting a bond (Resp. Exh. 2 at 14; Resp. Exh. 3 at 2).

While he was out on bond, Mejia was arrested again on July 6, 1979. That day, Mejia was at a bar and removed a loaded revolver from his waistband and laid it on a table. The police were called to the scene and arrested Mejia for possession of a firearm by an ex-felon. Charges were filed against him on the possession charge. For the earlier automobile collision, he pled guilty to felony manslaughter. For his subsequent offense, he pled guilty to possessing a firearm as an ex-felon. On October 3, 1979, he was sentenced to six years and eight months imprisonment (Resp. Exh. 2 at 16).

While in prison, Mejia was charged with a murder that occurred while he had been released on bond. On June 10, 1979, Mejia and his crime partner planned to rob Thomas Biddle, a 19-year-old drug dealer. Mejia and his partner went to Biddle's apartment complex armed with guns. Before they could complete their plan, however, they saw that they had been noticed by someone else living in the complex. Believing that the individual had informed Biddle about the planned robbery, Mejia and his partner tried to leave the complex. As they attempted to escape, Biddle emerged from the complex and began following them. Mejia turned around and said, "We don't need to hurt each other." When Mejia saw Biddle pull out a weapon, Mejia fired his gun in Biddle's direction. A bullet struck Biddle behind his left shoulder and pierced through his left lung, pulmonary artery, and right lung. He died shortly after.

On November 14, 1979, Mejia pled nolo contendere to one count of second degree murder and was sentenced to fifteen-years-to-life, to run concurrently with the former sentence. A two-year weapon enhancement term was stayed pending completion of both sentences. Mejia was committed on November 16, 1979. He became eligible to parole on his "minimum eligible parole date" of July 16, 1989 (Resp. Exh. 2 at 10–20, 64; Resp. Exh. 3 at 1; Resp. Exh. 4 at 13).

Mejia also committed other offenses before he committed the above-listed crimes. In 1986, he was committed to the California Youth Authority for stealing a car. He was

1 recommitted in 1967 on a robbery charge. Mejia returned again to the Youth Authority as a
2 parole violator after being charged with assault with intent to commit murder.

3     As an adult, Mejia was convicted of burglary in 1971 and given a three-year probation
4 term. While on probation, Mejia was convicted of drunk driving in January 1972. He was
5 convicted of drunk driving again in January 1973, July 1973, and November 1973. In May
6 1974, Mejia was playing around with a gun while drunk and shot his wife. He was sentenced
7 for six months to fifteen years for manslaughter. He was paroled in 1977. While on parole,
8 Mejia pled guilty to possession of a controlled substance. A burglary charge was dismissed.
9 He was convicted of driving under the influence in 1977 (Resp. Exh. 2 at 18–20).

10     During his first six years in prison, Mejia committed five disciplinary violations related
11 to drinking homemade alcohol. He has not committed any disciplinary violations since then.
12 During his last nineteen years in prison, Mejia obtained his GED, completed numerous college
13 courses, and became state-certified in welding, mechanical drawing, and sewing machine repair.
14 He also nearly completed a course in data processing. He participated for two decades in
15 Alcoholics Anonymous and Narcotics Anonymous, and over a dozen other prison programs.
16 He received positive job-performance reports, and received many laudatory memoranda from
17 prison staff. He was alcohol-free for the nineteen years leading up to the parole hearing at issue
18 here (Resp. Exh 2 at 31–36, 65, 67; Pet. Exh. D).

19     Meija had six parole hearings between 1988 and 2003. The Board of Prison Terms
20 found him unsuitable for parole each time, and refused to set his term or a parole date. The
21 parole consideration hearing at issue in this petition was Mejia's seventh. The hearing took
22 place on April 28, 2005. The panel allowed Mejia to present evidence and make a statement.
23 The panel ultimately found Mejia unsuitable for parole because he would pose an unreasonable
24 risk of danger to society and a threat to the public safety. The factors that the panel cited in
25 support of its decision were: (1) that the commitment offense was carried out in a violent, brutal
26 manner demonstrating an exceptionally callous disregard for human suffering and life; (2) that
27 multiple victims were killed in separate incidents; (3) that the crime did not deter Mejia from
28 committing other offenses; (4) that Mejia had a record of violence and criminal behavior;

1    (5) that he failed to benefit from society's previous attempts to correct his criminality; (6) that
2    the psychological evaluation of Mejia was not "totally supportive" of release; and (7) that he
3    had no parole plans for employment. The panel noted that he had done a "remarkable job" in
4    the area of "programming" and prison behavior (Resp. Exh. 2 at 63–69).

5    The Los Angeles County Superior Court denied Mejia's petition for writ of habeas
6    corpus on November 23, 2005. The Superior Court found that the panel had erred when it
7    found (1) that "multiple victims" were attacked during the murder and (2) that the crime
8    exhibited an "exceptional callous disregard for human suffering." Notwithstanding those errors,
9    the Superior Court found that the panel's decision that Mejia was unsuitable for parole was
10   supported by "some evidence," pursuant to *In re Rosenkrantz*, 29 Cal. 4th 616, 667 (2002). The
11   court specifically noted that Mejia had a long record of violence, that the psychological
12   evaluator concluded Mejia would pose a moderate degree of risk to the community if released,
13   and that the "wreckage" of his past was an "almost insurmountable hurdle" that was of primary
14   concern to the parole board. The California Court of Appeal summarily denied Mejia's petition
15   without opinion on March 23, 2006. The California Supreme Court did the same on June 14,
16   2006 (Resp. Exhs. 5, 6, 7). Mejia filed the instant petition for writ of habeas corpus on June 30,
17   2006.

**ANALYSIS**

19   Persons in custody pursuant to a state-court judgment may be freed by a district court if
20   they are held in violation of the Constitution, laws, or treaties of the United States. They must,
21   however, exhaust their remedies in state court, or demonstrate that such appeals either are
22   unavailable or ineffective. If a petitioner advances a claim that was decided in state court on the
23   merits, the petitioner must establish that either: (1) the state court decision was contrary to
24   clearly established federal law, as determined by the Supreme Court; (2) involved an
25   unreasonable application of clearly established federal law, as determined by the Supreme
26   Court; or (3) was based on an unreasonable determination of the facts in light of the evidence
27   presented in state court. 28 U.S.C. 2254(a), (b)(1), (d).

4

Under the Antiterrorism and Effective Death Penalty Act, a state court's decision can be overruled as "contrary to" federal law if it fails to apply the correct Supreme Court authority or if it applies such authority incorrectly to a case involving facts "materially indistinguishable" from those in the controlling decision. A state court can also be trumped if it used federal law unreasonably. There are two ways it may so err: (1) by applying the governing Supreme Court rule to a new set of facts in a way that is objectively unreasonable, or (2) by extending or failing to extend a clearly-established legal principle to a new context in a way that is objectively unreasonable. Clearly-established federal law exists only in the holdings, but not in the dicta, of Supreme Court decisions. *See Williams v. Taylor*, 529 U.S. 362, 405–12 (2000). The applicable law is also limited to those decisions handed down before the state court issued its decision. *See Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). Determinations of factual issues by a state court must be presumed correct. They can only be rebutted by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

When evaluating the state court's adjudication, federal courts examine the last reasoned judgment of a state court, not later, unexplained decisions upholding that judgment. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Here, the last reasoned state-court decision was the Superior Court's decision. It is that decision that this order reviews.

### 1. ALLEGED DUE PROCESS VIOLATION.

Mejia contends that his due process rights were violated when he was denied parole. The Fourteenth Amendment to the Constitution provides that no state may "deprive any person of life, liberty, or property, without due process of law." When evaluating a claim brought under the Due Process Clause, there are two steps: *first*, is there any protected interest at all and, *second*, if there is a protected interest, did the state provide the requisite procedural protections.

#### A. Existence of a Protected Liberty Interest.

Respondent denies that Mejia has a protected liberty interest in parole. Respondent acknowledges, however, that this issue was recently decided by the Ninth Circuit in *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006). In *Sass*, the Ninth

5

1  Circuit plainly held that California prisoners do have "a constitutionally protected liberty
2  interest in a parole date." Respondent merely wishes to preserve the argument for appeal
3  (Br. 4). In light of respondent's position, this order briefly explains why Mejia has a
4  constitutionally-protected liberty interest in parole.

5  In *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 12
6  (1979), the United States Supreme Court held that a state's statutory parole scheme may create
7  "a presumption that parole release will be granted" if it uses mandatory rather than permissive
8  language. The *Greenholtz* court held that where Nebraska's parole statute provided that the
9  parole board "shall order" release of eligible inmates, that presumption of parole gave rise to a
10 constitutionally-protected liberty interest that could not be denied without adequate due process
11 of law. *Id.* at 11–16. The Supreme Court revisited this issue in *Board of Pardons v. Allen*, 482
12 U.S. 369, 376–78 (1987). In *Allen*, the Supreme Court held that where Montana's statutory
13 parole scheme instructed that the parole board "shall" release a prisoner absent certain
14 conditions, the prisoner had a liberty interest in parole even though the parole board had great
15 discretion. *Id.* at 381.

16 Under California law, the Board of Prison Terms "shall set a release date unless it
17 determines that the gravity of the current convicted offense . . . is such that consideration of the
18 public safety requires a more lengthy period of incarceration." Cal. Penal Code 3041(b). By
19 using such mandatory language, California's parole scheme gives rise to the same liberty
20 interest recognized in *Greenholtz* and *Allen*. The Ninth Circuit has recognized that "Section
21 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole
22 which is protected by the procedural safeguards of the Due Process Clause." *Biggs v. Terhune*,
23 334 F.3d 910, 915–16 (9th Cir. 2003). This principle was more recently reaffirmed in *Sass.*
24 461 F.3d at 1128.

25 For these reasons, Mejia has a protected liberty interest in parole. Accordingly, this
26 Court has jurisdiction over this petition. This order now addressees whether the state provided
27 Mejia with adequate due process.

28

6

### B. Requisite Due Process Protections.

The Ninth Circuit has held that when an inmate has a protected liberty interest in parole, due process requires that "some evidence" support the board's decision not to release the prisoner. The "some evidence" standard is derived from the Supreme Court's decision in *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). There, the Supreme Court held that a revocation of a prisoner's good-time credits must be supported by "some evidence." Relevant Ninth Circuit precedent recognizes that "[i]n the parole context, the requirements of due process are satisfied if 'some evidence' supports the decision." *Biggs*, 334 F.3d at 915. This order holds as the Ninth Circuit has: "Though the liberty interest at stake [in *Hill*] surrounded the accumulation of good time credits, rather than the parole decision which is at issue here, both directly affect the duration of the prison term; thus, the *Hill* decision is applicable in [cases involving parole decisions]." *Jancsek v. Or. Board of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). The "some evidence" standard is clearly-established law in the parole context.[1]

The Superior Court denied Mejia's state habeas petition, holding that "some evidence" supported the board's decision. The Superior Court held that the following facts supported the board's decision: (1) Mejia had a previous record of violence; (2) a 2003 psychological evaluation of Mejia concluded that he would pose a "moderate" degree of risk to the community; and (3) Mejia received five disciplinary violations for "serious misconduct" since his incarceration, including assault on staff and being under the influence of alcohol. The Superior Court thus concluded that the board's conclusion was supported by "some evidence" (Resp. Exh. 5).[2]

---

[1] In his traverse, Mejia contends that the "some evidence" standard should not apply because *Hill* did not directly deal with parole. Without citation, Mejia contends that the more rigorous "substantial evidence" standard should apply. His argument ignores the clear Ninth Circuit precedent that applies the "some evidence" standard to parole decisions. Moreover, aside from being easily dismissed, Mejia's standard-of-review argument was improperly raised for the first time in his traverse. It is denied for that reason as well.

[2] It is acknowledged that the Superior Court found that several of the board's factors had no basis in the record. These were the board's conclusions regarding the commitment offense, namely, that it was carried out against multiple victims and that the crime demonstrated an exceptionally callous disregard for human suffering. The Superior Court held that those conclusions were in error. Neither party contests those holdings by the Superior Court. Here, the relevant analysis does not require determination whether *all* the board's conclusions were correct. This order need only decide whether the Superior Court erred by holding that "some

7

Mejia contends that the factors relied on by the Superior Court and board do not satisfy the "some evidence" standard because they were based on the unchangeable facts of his criminal history. He contends that due process cannot be satisfied by reliance on those facts to deny parole. Mejia relies heavily on *Biggs*, in which the Ninth Circuit held that "some evidence" supported the board's denial of parole, specifically the gravity of the petitioner's offense, which exhibited a callous disregard for life. The Ninth Circuit explained that "in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements of state law." *See Biggs*, 334 F.3d at 916. The *Biggs* court, however, cautioned: "Over time . . . should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole. . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.'" *Id.* at 916–17.

Mejia thus contends that the situation discussed hypothetically in *Biggs* has arisen here. He claims that reliance on factors that he cannot change, namely his criminal history and earlier reprimands for prison misconduct, should not form the basis for denial of parole. This argument has been made several times before various district courts in California. Some courts, relying on *Biggs*, have granted habeas corpus relief. *See*, *e.g.*, *Rosenkrantz v. Marshall*, 444 F. Supp. 2d 1063 (C.D. Cal. 2006); *Sanchez v. Kane*, 444 F. Supp. 2d 1049 (C.D. Cal. 2006); *Martin v. Marshall*, 431 F. Supp. 2d 1038 (N.D. Cal. 2006); *Irons v. Warden of Cal. State Prison — Solano*, 358 F. Supp. 2d 936 (C.D. Cal. 2005).[3] Other courts, however, including the undersigned, have denied relief. *See*, *e.g.*, *Fernandez v. Kane*, No. C 05-4566 SI, 2006 WL 3041083, at *1 (N.D. Cal. Oct. 24, 2006); *Anderson v. Schwartz*, No. C 06-2481 TEH, 2006 WL

---

evidence" supported the board's decision.

[3] An appeal of the *Irons* decision is currently pending before the Ninth Circuit. *See Irons v. Carey*, 408 F.3d 1165 (2005).

8

1 2472210, at *1 (N.D. Cal. Aug. 24, 2006); *Walker v. Alameda*, No. C 02-2458 JSW, 2006 WL

2 825445, at *1 (N.D. Cal. Mar. 30, 2006); *Machado v. Kane*, No. C 05-01632 WHA, 2006 WL

3 449146, at *1 (N.D. Cal. Feb. 22, 2006).

4       This order finds that it is improper to rely on the dicta from *Biggs* to grant habeas corpus

5 relief. As the undersigned has noted once before:

> This Court cannot rely upon such a thin reed to overturn, in a
> habeas action, a state-court ruling. However wise *Biggs*'
> statement was, it is Ninth Circuit dicta without apparent
> foundation in any Supreme Court holding. The passage from
> *Biggs* therefore was not clearly established federal law, as
> determined by the Supreme Court, and cannot be used to overturn
> the state-court ruling here.

10 *Machado*, 2006 WL 449146, at *6. The language quoted from *Biggs* is still dicta. Mejia cites

11 no Supreme Court authority supporting the theory that unchangeable facts may not be used to

12 deny parole. This order holds that clearly-established federal law, as determined by the

13 Supreme Court, does not support Mejia's argument that the board's reliance on unchanging

14 facts to deny parole is, in itself, a violation of due process. Section 2254 relief may not be

15 granted on that ground.[4]

16       Turning to the Superior Court's denial of habeas corpus, this order now considers

17 whether the Superior Court erred when it held that "some evidence" supported the board's

18 decision. This order concludes that "some evidence" supported the board's decision and that

19 Mejia's due process rights were not violated.

20       Perhaps one of the most important factors relied upon by the board was Mejia's lengthy

21 criminal history. *See* Cal. Code Regs., tit. 15, 2402(c)(2) (including "previous record of

22 violence" as a "circumstance[] tending to indicate unsuitability" for release). Significantly,

23 Mejia does not contest that he committed numerous offenses prior to his most recent

24 incarceration. Mejia was convicted of manslaughter, burglary, possession of a controlled

25 substance, and had at least five convictions for driving under the influence. Mejia concedes that

26 "his criminal history prior to the commitment offenses was extensive and sometimes violent."

---

[4] Indeed, the Ninth Circuit has since cautioned that the above-quoted statements from *Biggs* were inappropriate because "[u]nder AEDPA it is not our function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129.

9

Mejia's only argument that his prior offenses should not have been the basis for the board's conclusion is that they were "unchangeable" (Pet. 9). As this order has held, however, the board's reliance on unchangeable facts like a prisoner's commitment offense and prior criminal history is not inconsistent with clearly-established federal law as determined by the Supreme Court. Mejia's lengthy criminal history alone is enough to constitute the "some evidence" necessary to support the board's conclusion.

The board and Superior Court also relied on a 2003 psychological evaluation, which found that Mejia had a "moderate" level of risk of future violence. *See* Cal. Code Regs., tit. 15, 2402(b) (permitting board to consider any "relevant, reliable information available . . . in determining suitability for parole"). The board found that the psychological evaluation of Mejia was not "totally supportive" of release. On review, the Superior Court agreed with the board's reliance on the psychological evaluation. Mejia now makes two arguments that such reliance was improper.

*First*, Mejia contends that the board's statement that the evaluation was "not totally supportive of release" was "arbitrary," and that a psychiatric evaluation "totally supportive of release" is not required by California's parole scheme. This argument lacks merit. The psychological evaluation noted many of the positive steps petitioner had made to turn his life around. The evaluator noted, however: "[I]t's not clear . . . whether he understands the wide swath that his destructive behavior cut. . . . [T]his examiner experiences some incredulity regarding [Mejia's] accounts of the deaths of his two shooting victims, *i.e.*, that both were accidental. . . . [Mejia] could do some exploration of this issue in his groups and therapy. . . . [Mejia's] past behavior is not insignificant regardless of changes he has made and should not be forgotten when evaluating for risk of future violence" (Pet. Exh. C at 5). This order cannot find that it was wrong, much less "arbitrary," for the board to characterize the evaluation as not "totally supportive" of release. Additionally, although California does not require a "totally supportive" psychological evaluation before parole can be granted, the board may consider a broad range of circumstances. The statutory scheme even recognizes that "[c]ircumstances

10

1  which taken alone may not firmly establish unsuitability for parole may contribute to a pattern
2  which results in a finding of unsuitability." Cal. Code Regs., tit. 15, 2402(b).

3  *Second*, Mejia contends that the psychological evaluation itself was inherently invalid.
4  Mejia contends that the method of evaluation used by the psychological examiner in 2003 —
5  the so-called Essres/Livingston method — was improperly based only on unchanging historical
6  facts and that Essres/Livingston method will always produce a recidivism rate of "moderate."
7  Mejia cites as support a declaration by a forensic psychologist who states that the
8  Essres/Livingston format is "inappropriate and unreliable" because, among other things, it is
9  based on "historical, static factors that never change" (Pet. Exh. E). Mejia notes that several
10 other psychological examiners, who used formats other than the Essres/Livingston method,
11 assessed Mejia's "violence potential in the community" to be "below average" and "less than
12 average."

13 Mejia essentially asks that the Essres/Livingston method of evaluation be declared
14 invalid. There is insufficient evidence in this record to do so. Nor is further inquiry into the
15 validity of this particular method necessary. The board is given broad discretion to consider
16 various factors when making a parole determination. *See* Cal. Code Regs., tit. 15, 2402(b). The
17 Supreme Court has recognized: "No ideal, error-free way to make parole-release decisions has
18 been developed; the whole question has been and will continue to be the subject of
19 experimentation involving analysis of psychological factors combined with fact evaluation
20 guided by the practical experience of the actual parole decisionmakers in predicting future
21 behavior. Our system of federalism encourages this state experimentation." *Greenholtz*, 442
22 U.S. at 13. The parole board and its psychological examiners must be allowed to adjust their
23 analyses according to their practical experience. Here, the 2003 examination of Mejia involved
24 a comprehensive assessment of his current mental status, treatment needs, criminal history, and
25 risk for future violence. It assessed all of the relevant factors the board should consider under
26 Section 2402(b). Moreover, the examiner who conducted Mejia's evaluation stated that the
27 conclusion was based on "both static and dynamic factors" (Pet. Exh. C at 5). "[T]he evidence
28 underlying the board's decision must have *some* indicia of reliability." *Jancsek*, 833 F.2d at

11

1390 (emphasis added). Here, because the psychological assessment of Mejia has some indicia of reliability, it also may constitute "some evidence" that supports the board's decision to deny parole.

Petitioner also suggests that the board's statement that he "needs additional time in order to fully understand and deal with the consequences of his acts" was also arbitrary and lacked evidence to support it. This order disagrees. The 2003 psychological evaluation stated that Mejia could do "some exploration" of various issues related to his criminal history in "groups and therapy" (Pet. Exh. C at 5). The board's statement was not arbitrary.

Finally, the Superior Court held that "it [was] vitally important here to note" Mejia's institutional misconduct, including five disciplinary violations for "serious misconduct." Including that misconduct, the Superior Court calculated that Mejia "had, for twenty years, engaged in a destructive life of crime and serious misconduct. For the last nineteen years he has exhibited a changed lifestyle. While those changes certainly enhance the possibility of parole suitability, they may never truly outweigh the wreckage of his past" (Pet. Exh. F at 3). Because Mejia does not dispute his history of misbehavior in prison, this order finds that his misbehavior in prison, coupled with his criminal history, also constituted "some evidence" supporting the board's decision. *See* Cal. Code Regs., tit. 15, 2402(c)(6) (noting that if "prisoner has engaged in serious misconduct in prison or jail," that could be a circumstance "tending to show unsuitability" for parole).

### C.   Other Arguments.

Mejia contends that the board "obviously failed to consider or weigh the undisputedly overwhelming [e]vidence of the subsequent 19 years (twice his minimum prison term) of his exemplary reform and overall record that compel his parole." Mejia further states that the panel did not properly decide by a "preponderance of the evidence that there is a factual basis and good reason for the [parole] decision made" (Pet. 16). *See* 15 Cal. Code Regs 2000(b)(50) (requiring board to apply preponderance standard). Mejia is wrong. The panel very clearly did consider and weigh the progress he made while incarcerated, specifically stating: "[H]e should be commended for his involvement in AA and NA, for having no [disciplinary record] since

1   1986, for his self-help programming, for his receiving his high school diploma and for
2   completing vocational Welding, vocational Plumbing, vocational Mechanical Drawing and
3   vocational Sewing Machine Repair.  However, those positive aspects of his behavior do not
4   outweigh the factors of unsuitability" (Resp. Exh. 2 at 68).  Moreover, there is no basis to hold
5   that the board misapplied the preponderance standard to its own decision.  This Court need only
6   determine whether the Superior Court erred by finding that "some evidence" supported the
7   board's parole decision.  The board here considered and discussed Mejia's circumstances,
8   including both negative and positive factors.  Those factors are supported by the record.  "Some
9   evidence" supports the board's decision and its assessment of Mejia's past and present
10  circumstances.

11      Mejia also alleges that no rational nexus existed between the unchangeable factors and
12  his current risk of violence.  Mejia argues in essence that only an inmate's recent conduct — as
13  opposed to his past conduct — can adequately predict that inmate's future risk of violence.
14  This order disagrees.  There is no clearly-established Supreme Court precedent requiring that
15  the board state such a nexus.  Indeed, *Biggs* held that the "some evidence" standard was
16  satisfied by the board's consideration of the gravity of the petitioner's offense alone.  *Biggs*,
17  334 F.3d at 916.  Here, Mejia's long criminal history provided support for the board's decision.
18  As the board noted, Mejia had been on parole or probation continuously since his arrest in 1971
19  on burglary charges.  This order agrees with the Superior Court:  "It has been said that the best
20  predicator of future behavior is past.  The Board would simply be remiss to overlook
21  petitioner's historical record" (Pet. Exh. F).  Moreover, as one court has noted:  "Past criminal
22  conduct is not some arbitrary factor like eye color that has nothing to do with present
23  dangerousness.  Recidivism concerns are genuine."  *Fernandez*, 2006 WL 3041083, at *4.
24  Mejia's contention that the board should identify some nexus between the inmate's past conduct
25  and his risk of future violence lacks merit.

26      Finally, Mejia makes several arguments in his traverse regarding his second-degree
27  murder conviction — the conviction for which he is now imprisoned.  Specifically, he contends
28  that the facts of his conviction were the "minimum" necessary to support his conviction.  In his

13

view, these facts could not be used to deny him parole. He also contends that he has served more than the term prescribed for *first*-degree murder, in violation of his due process rights. Mejia's arguments carry no weight. Mejia ignores the relevant AEDPA standard, insofar as he cites to no clearly-established federal law as determined by the Supreme Court that would support his theory. Moreover, by raising these arguments for the first time in his traverse, Mejia blatantly sandbagged respondent, who had no opportunity to respond to them. Finally, there is no evidence that Mejia exhausted these arguments in state proceedings. For these reasons, Mejia is foreclosed from raising these arguments now.

*          *          *

In sum, the Superior Court's decision, which was based in significant part on Mejia's destructive past, was not contrary to and did not involve an unreasonable application of clearly-established federal law as determined by the Supreme Court. Nor was it based on an unreasonable determination of the facts.

### 2. MEJIA'S PLEA AGREEMENT.

Mejia argues that the state has breached a material term of his plea agreement by not releasing him. Mejia does not dispute that he was sentenced to a term of fifteen years to life. He contends, however, that at his plea colloquy, the state prosecutor promised him that he would be released. At the colloquy, the prosecutor stated: "You understand, further, that after serving your time in the State Prison, *you will be released on parole*, and that parole would be for a period of five years. And for any violation of any term or condition of that parole, you could be returned to the State Prison to serve up to an additional three years for that violation of parole" (Pet. Exh. B at 9). Mejia seizes on the prosecutor's language that "you will be released on parole" to contend that the state has breached its plea agreement by not releasing him.

Mejia's argument clearly lacks merit. Read in context, the prosecutor was not promising that Mejia would be released at any particular time. The prosecutor was merely advising Mejia of a five-year mandatory parole term once he was released. True, the prosecutor should have qualified his statement by saying "*if* you are released on parole." But this minor deficiency is not enough to warrant habeas relief. This order agrees with the Superior Court's assessment of

14

the issue: "Petitioner agreed to an indeterminate term with a maximum of *life*. He does not argue that anyone promised he would serve the minimum term. Regardless of his assertion that he expected only to serve 'sufficient time,' the indeterminate sentence is in legal effect a sentence for the *maximum* term, subject only to the ameliorative power of the parole authority to set a lesser term" (Pet. Exh. F at 4–5).

## CONCLUSION

Mejia is not being held in violation of the Constitution. The denial of parole by the Board of Prison Terms was supported by some evidence and did not otherwise violate Mejia's right to due process of law. The Superior Court's decision was consistent with clearly-established federal law as determined by the Supreme Court. The state has not breached a material term of Mejia's plea agreement. For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 3, 2007

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

15